## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| CRYSTAL CLEARWATER RESOURCES, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| APOORVA SHARMA AND SIFI ENGINEERING AND FABRICATION LTD., | § | **JURY DEMANDED** |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

---

### VERIFIED COMPLAINT

---

Plaintiff Crystal Clearwater Resources, LLC ("CCR") files this Verified Complaint against its former executive Apoorva Sharma ("Sharma") and former fabrication partner SiFi Engineering and Fabrication Ltd. ("SiFi") for misappropriation of CCR's trade secrets, breach of contract, and unfair competition based on their ongoing efforts to sell a copy of CCR's system to CCR's potential customers using CCR's confidential information and CCR's trade secrets.

### I.    PARTIES

1.    Plaintiff CCR is a Delaware limited liability company with its principal place of business in Frisco, Texas.

2.    Defendant Sharma is an individual who resides in Canada. Sharma is a former employee and executive of CCR, previously serving as CCR's Chief Strategy and Sustainability Officer and, before then, as Chief Operating Officer.

3.      Defendant SiFi is a Canadian limited liability company conducting business in Texas.  SiFi has its principal place of business at 233167B Range Road 283 Rocky View County, Alberta, T1X 0J9.

## II.    JURISDICTION AND VENUE

4.      This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act. 18 U.S.C. § 1836.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5.      Further, this Court has jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

6.       Defendants are subject to personal jurisdiction in this district and venue is proper in this district because Defendant Sharma contractually consented to jurisdiction and venue in this district and Defendant SiFi contracted with CCR and purposefully availed itself of the laws of Texas by regularly conducted business in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district

## III.    FACTUAL BACKGROUND

### A.    CCR Water Treatment and D2 Production

7.      Founded in 2014, CCR develops and provides advanced technology to address the growing need to treat and clean wastewater from industrial sites so that it can be reused. CCR's water treatment technology is designed for industrial waste, inland desalination, reclamation on military bases that have forever chemicals, and treating produced water from oil and gas drilling operations.

8.      For the past decade CCR has primarily focused on the challenge of cleaning wastewater from hydraulic fracturing and other oil and gas mining efforts as the oil and gas industry has a tremendous need for water treatment solutions to address their produced water.

9.      Through constant research, development, and testing, CCR has developed what it has termed spontaneous evaporation and condensation ("SPEC") technology. CCR's SPEC technology is a low-pressure, thermal desalination process that is heat-source agnostic, tolerant of highly variable feed water and heat input, and can be remotely operated and monitored.

10.     The keys of CCR's technology lies in a series of water treatment steps based on evaporation, requiring a complex system of managing the temperature and pressure of the water under treatment in order to separate out dissolved solids. CCR has spent years and millions of dollars to develop its system, including the precise parameters to treat wastewater in through its systems.

11.     As part of its research and development efforts, CCR has built two pilots or demonstration plants, termed Demonstration Plant 1 ("D1") and Demonstration Plant 2 ("D2"). The D1 was successfully tested and demonstrated in 2022 and D2 was successfully tested and demonstrated in 2024.

12.     The D2 plant achieved a number of important milestones, including the following:

- 101 days of continuous (24/7) stable operations;
- 98% uptime;
- no pre-treatment of incoming produced water required;
- treated raw produced water and clean brine (~135,000 ppm TDS);
- created over 50% recovery of freshwater ready for beneficial reuse;
- achieved stable brine concentrate of 290,000+ ppm TDS;
- operated successfully and continuously throughout variable heat and feed quality fluctuations;
- operated remotely;
- demonstrated cost-effectiveness; and

- demonstrated the capability of re-using waste heat from oil and gas drilling operations.

13.     These trade secrets and other confidential information are the value add and entire business of CCR.  CCR's competitive advantage is based on the fact that its technology can deliver better results for lower cost than competitors—and that advantage is due to the development of CCR's SPEC technology.

14.     CCR's innovations have been recognized by the industry. In 2019, CCR was one of three winners of Chevron's Tech Challenge, which seeks to identify technology pioneers in recognition of their innovative technologies and business solutions in the field of produced water management.[1]

15.     In 2024, CCR was named a Top 10 Innovator in Sustainability by Darcy Partners— a leading provider of technology-focused market intelligence to the energy sector. Darcy's director stated that "[t]hese awards represent the most promising innovations we've evaluated this year," and that "we've identified technology providers who are truly moving the needle in their respective domains."[2]

16.     CCR has innovated and fine-tuned its SPEC technology for over a decade. Accordingly, improper use and theft of these trade secrets would result in immeasurable damage to CCR.

17.     After years of research, development, and testing, CCR is now on track to build and sell commercial plants utilizing its SPEC technology.

---

[1] https://www.chevron.com/newsroom/2019/q1/chevron-technology-ventures-awards-technology-pioneers
[2] https://www.prnewswire.com/news-releases/darcy-partners-announces-top-oil--gas-innovators-of-2024-302386377.html

18.    CCR has taken reasonable steps to protect these trade secrets.  Specifically, CCR requires confidentiality agreements before disclosing aspects of its trade secrets to employees, vendors, and prospective customers, implements software to ensure its data is protected from intrusion, and monitors for any unauthorized use of its trade secrets.

**B.    CCR Provides Confidential Information to Defendants to Produce D2 Plant.**

19.    Defendant Sharma joined CCR in 2021 and served as an executive until he left the company in 2024. Defendant Sharma served first as CCR's Chief Operating Officer and then CCR's Chief Strategy and Sustainability Officer.

20.    Defendant Sharma has a technical background and an engineering degree.

21.    Due to the nature of Sharma's position, Sharma was provided access to CCR's confidential information and trade secrets.

22.    In 2022, CCR contracted with SiFi for SiFi to manufacture the D2 plant—a proof of concept for one of CCR's customers.

23.    As part of his employment, Sharma and CCR executed a Confidentiality, Nonsolicitation, and Intellectual-Property Agreement (the "Sharma Confidentiality Agreement").

24.    Article 3(b) of the Sharma Confidentiality Agreement provides that Sharma "promises at all times to hold in strictest confidence, and not to disclose or use for any purpose, any Confidential Information or specialized training except (i) in the course of the proper performance of Employee's job duties, (ii) with the prior written consent of an authorized officer of Company, or (iii) as specifically permitted" by the Agreement.  Article 11 of the Sharma Confidentiality Agreement permits the disclosure of Confidential Information as required by federal, state, and local laws.

25.     Article 2 of the Sharma Confidentiality Agreement defined "Confidential Information" to include "all of Company's proprietary, confidential, economic, and other business information, including, without limitation, all information that gives Company a competitive advantage and is not generally known or readily ascertainable by independent investigation; technical information, including inventions, computer programs, computer processes, computer codes, software, website structure and content, databases, formulae, designs, compilations of information, data, proprietary production processes, and know-how related to Company's operations; […] customer and account information, including customer contacts, customer and prospective customer lists, customer and prospective customer identities, customer preferences, customer purchasing or service terms, and specially negotiated terms with customers; information about Company's future plans, including marketing strategies, target markets, promotions, sales plans, projects and proposals, research and development, and new materials research."

26.     Paragraph 12(a) of the Sharma Confidentiality Agreement provides that Sharma's covenants to not disclose CCR's Confidential Information "survive the termination of [the] Agreement."

27.     Defendant Sharma also worked closely with SiFi on the development of the D2 plant.

28.     On or about September 17, 2024, Sharma voluntarily resigned from his employment with CCR.  Sharma left CCR with knowledge of CCR's trade secrets and confidential information, such as CCR's SPEC technology and the identity and details around CCR's vendors, consultants, and potential customers.

29.     By virtue of being an executive with CCR, Sharma has a fiduciary duty to CCR.

30.     In early October of 2025, CCR learned that Sharma was contacting CCR's vendors, such as fabrication partners and consultants, which indicated a potential violation of the Sharma Confidentiality Agreement.

31.     On October 16, 2025, CCR sent Sharma a letter reminding him of his obligations under the Sharma Confidentiality Agreement.

32.     CCR and SiFi executed a Mutual Non-Disclosure Agreement (the "SiFi NDA") in 2022—before CCR provided SiFi with any of CCR's trade secrets.

33.     The SiFi NDA requires SiFi to "refrain from disclosing [CCR's] Confidential Information to any contractor or third party without the prior, written approval from the disclosing Party."

34.     The SiFi NDA defined Confidential Information to include business plans, personnel, customers, suppliers, inventions, processes, methods, products, technical know-how, specifications, drawings, sketches, models, computer programs, and technical information.

35.     After executing the SiFi NDA in 2022, CCR, through Sharma and other employees and consultants, worked with SiFi to build, test, and refine the D2 plant that embodies CCR's SPEC technology.

36.     In January 2024, the D2 plant was completed and successfully demonstrated to CCR's customer in West Texas.

37.     Defendants recognized that these trade secrets and confidential information were critical business information and disclosure of the information would irreparably harm CCR.

38.     Per the SiFi NDA, SiFi agreed that CCR "will suffer irreparable injury if [CCR's] Confidential Information is made public, released to a third party, or otherwise disclosed in breach of [the] Agreement."

39.     Similarly, in article 5(a) of the Sharma Confidentiality Agreement, Sharma agreed that improper disclosure of CCR's confidential information to competitors "would irreparably harm [CCR's] competitive position in the marketplace."  Further, in article 12(b), Sharma agreed that if Sharma breached the Confidentiality Agreement by disclosing confidential information CCR would be "entitled to equitable relief."

40.     At the completion of the D2 plant project with SiFi, SiFi did not return CCR's confidential material, such as the plant drawings, schematics, process flows, or other technical information. Nor did SiFi confirm that it destroyed all of CCR's confidential information.

41.     For example, SiFi has the engineering drawings for the D2 plant, as well as the piping and instrumentation diagram. Further, SiFi had access to and may still have the control narrative for the D2 plant.

42.     The control narrative contains some of the most sensitive information around CCR's trade secrets because it details the specific operational controls of each stage of the water treatment process as implemented in the D2 plant, which eventually is captured in the control software for the D2 plant. By virtue of having the engineering drawings, control narrative, and other technical documentation, Defendant SiFi is positioned to not only build a copy of the D2 plant, but would also have the technical details and process flow information to operate the plant.

**C.     Defendants Are Misappropriating CCR's Trade Secrets and Confidential Information.**

43.     CCR has learned that Defendants, together, have contracted, or are preparing to contract, with a third-party to produce a copy of CCR's D2 plant.

44.     On information and belief, Defendants are improperly using CCR's trade secrets, and otherwise confidential information, to market and sell a copy of CCR's D2 plant to a potential customer, which would necessarily contain CCR's trade secrets.

Docusign Envelope ID: D0802648-CE06-4F61-9B5B-7FCD2B8CE8FA

45.     Sharma obtained these trade secrets and confidential information through his employment with CCR.  Any use by Sharma of CCR's trade secrets violates federal and state law and constitutes a breach of the Sharma Confidentiality Agreement.

46.     SiFi obtained these trade secrets and confidential information through its prior contract work for CCR as a fabricator for CCR's D2 plant.  Any use by SiFi of CCR's trade secrets violates federal and state law.

47.     Specifically, on information and belief, Defendants are sharing or likely to share confidential details of CCR's SPEC technology and D2 plant to this potential customer, as well as third-party vendors and consultants, in order to market, develop, and sell a copy of CCR's D2 plant.

48.     On information and belief, Defendants are using CCR's confidential information and trade secrets to market CCR's D2 plant to a third party.

49.     The third party would be a customer of CCR, as D2 is a proprietary product of CCR and comprised of CCR's trade secrets.  Accordingly, if the third party desires to purchase a commercial version of CCR's D2 plant, it would have to work with CCR directly.

50.     On information and belief, Sharma used his knowledge of CCR's trade secrets, SPEC technology, and the details of the D2 plant in order to market CCR's technology to this potential customer—but without including CCR.

51.     On information and belief, Defendants will be disclosing CCR's trade secrets during the process of contracting with the third party to sell a copy of CCR's D2 plant.

52.     Defendants do not have a license or authorization from CCR to use or disclose any of CCR's confidential information and trade secrets.

## IV.     CLAIMS FOR RELIEF

**A.     COUNT I: Defend Trade Secrets Act, 18 U.S.C. § 1836**

53.     CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

54.     CCR possesses various trade secrets, including, but not limited to, control narrative, heat-and-material balance, drawings, schematics, software controls for timing of water treatment, testing data regarding the D2 plant, and engineering design, parts, and process flows for separating out various types of water contaminants.  These trade secrets derive independent economic value from not being generally known to the public through proper means.  CCR has taken reasonable measures to keep the trade secrets secret, including through confidentiality agreements and monitoring for misappropriation.

55.     Defendants obtained the trade secrets through positions of confidence with CCR, as evidenced by both Defendants agreeing that such trade secrets were confidential and should not be disclosed.  Accordingly, Defendants had knowledge that these were trade secrets.

56.     Defendants have disclosed and/or used CCR's trade secrets without CCR's consent.

57.     Defendants' intentional and willful misappropriation of the CCR's trade secrets has caused, and will continue to cause, damage to CCR, and is causing irreparable harm to CCR for which there is no adequate remedy at law. Therefore, CCR is entitled to injunctive relief against Defendants.

58.     Defendants' misappropriation has resulted in Defendants taking a customer that would be CCR's.  Accordingly, Defendants have been unjustly enriched, and CCR is entitled to recover Defendants' profits, its actual damages, and the costs of this action.

59.     CCR is further entitled to recover exemplary damages and attorneys' fees under 18 U.S.C. § 1836(3)(C)–(D), as Defendants have acted willfully, maliciously, and in bad faith.

**B.     COUNT II: Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §
134A.002**

60.     CCR realleges and incorporated by reference the allegations set forth in paragraphs
1-52.

61.     CCR possesses various trade secrets, including, but not limited to, control narrative,
heat-and-material balance, drawings, schematics, software controls for timing of water treatment,
testing data regarding the D2 plant, and engineering design, parts, and process flows for separating
out various types of water contaminants.  These trade secrets derive independent economic value
from not being generally known to the public through proper means.  CCR has taken reasonable
measures to keep the trade secrets secret, including through confidentiality agreements and
monitoring for misappropriation.

62.     Defendants obtained the trade secrets through positions of confidence with CCR,
as evidenced by both Defendants agreeing that such trade secrets were confidential and should not
be disclosed.  Accordingly, Defendants had knowledge that these were trade secrets.

63.     Defendants have used and/or plan to disclose CCR's trade secrets without CCR's
consent.

64.     Defendants' intentional and willful misappropriation of the CCR's trade secrets has
caused, and will continue to cause, damage to CCR, and is causing irreparable harm to CCR for
which there is no adequate remedy at law. Therefore, CCR is entitled to injunctive relief against
Defendants.

65.     Defendants' misappropriation has resulted in Defendants taking a customer that
would be CCR's.  Accordingly, Defendants have been unjustly enriched, and CCR is entitled to
recover Defendants' profits, its actual damages, and the costs of this action.

66.     CCR is further entitled to recover exemplary damages and attorneys' fees under

Tex. Civ. Prac. & Rem. Code §§ 134A.004–05, as Defendants have acted willfully, maliciously, and in bad faith.

### C.     COUNT III: Breach of Contract (Sharma)

67.     CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

68.     The Sharma Confidentiality Agreement is a valid and binding contract.

69.     Under the Sharma Confidentiality Agreement, Sharma agreed to not use or disclose CCR's confidential information.

70.     Sharma breached the Sharma Confidentiality Agreement by using and/or disclosing CCR's confidential information.

71.     CCR has sustained damage as a direct and proximate result of Sharma's breach in an amount to be proven at trial.

72.     CCR is also entitled to attorneys' fees resulting from this lawsuit and Sharma's breach of the contract.  Tex. Civ. Prac. & Rem. Code § 38.001.

### D.     COUNT IV: Conspiracy

73.     CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

74.     Defendants conspired, through a meeting of the minds, to contract with a third party through the unlawful means of misappropriating CCR's trade secrets.

75.     Defendants have committed an overt act in furtherance of their conspiracy by unlawfully disclosing CCR's trade secrets to third parties, including their prospective customers or vendors.

76.     CCR has sustained damage as a direct and proximate result of Defendants'

conspiracy in an amount to be proven at trial.

### E.    COUNT V: Unfair Competition by Misappropriation

77.    CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

78.    CCR has expended extensive time, labor, skill and money to create the D2 plant, which is built on CCR's confidential information.

79.    Defendants have misappropriated the confidential information that comprises the D2 plant.  Defendants take this confidential information without the burden or cost of developing the information necessary to produce the D2 plant.

80.    Defendants are now competing with CCR through marketing of CCR's D2 plant and use of the confidential information.

81.    CCR has sustained damage as a direct and proximate result of Defendants' misappropriation in an amount to be proven at trial.

### F.    COUNT VI: Breach of Fiduciary Duty (Sharma)

82.    CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

83.    As a former executive of CCR, Sharma owes CCR a fiduciary duty of loyalty and confidentiality for CCR's proprietary information.

84.    Sharma breached his fiduciary duties by unlawfully disclosing and using for his personal gain CCR's confidential information and trade secrets to the detriment of CCR.

85.    CCR has sustained damage as a direct and proximate result of SiFi's breach in an amount to be proven at trial.

86.    Further, Sharma has received pecuniary gain from his breach.  Sharma should not

Docusign Envelope ID: D0802648-CE0C-4E61-9B5B-7FCD2B8CE8EA

in justice retain these ill gotten gains.  Accordingly, Sharma should disgorge any profits to CCR.

## APPLICATION FOR TRO & PRELIMINARY INJUNCTION

87.    CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

88.    Defendants, unless enjoined, will continue to misappropriate CCR's trade secrets and unfairly compete with CCR by utilizing CCR's confidential information and trade secrets.

89.    On information and belief, Defendants have contracted, or are preparing to contract, with a potential customer of CCR.  Defendants are using CCR's trade secrets to obtain this contract and recreate CCR's proprietary commercial product.

90.    CCR is likely to succeed on its claims against Defendants, showing that Defendants have misappropriated CCR's trade secrets, that Sharma has breached his contract with CCR, and Sharma has breached his fiduciary duties to CCR.

91.    As Defendants have recognized in writing, disclosure and use of CCR's trade secrets will result in irreparable harm, such that Defendants must immediately be enjoined from disclosing and using CCR's trade secrets.

92.    An injunction would promote, rather than hinder, the public welfare.  The balance of equities support entering injunctive relief.

93.    These actions entitle CCR to a temporary restraining order and, after a hearing, preliminary injunction, enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all persons in active concert or in participation with Defendants from:

(a)    Disclosing or using CCR's trade secrets; and

(b)    Otherwise competing unfairly with CCR or injuring its business reputation in any manner.

94.    For these actions, there is no adequate remedy at law. CCR is therefore entitled to

injunctive relief against Defendants under Federal Rule of Civil Procedure 65.

## APPLICATION FOR PERMANENT INJUNCTION

95.     CCR realleges and incorporated by reference the allegations set forth in paragraphs 1-52.

96.     Defendants, unless enjoined, will continue to misappropriate CCR's trade secrets.

97.     On information and belief, Defendants have contracted, or are preparing to contract, with a potential customer of CCR.  Defendants are using CCR's trade secrets to obtain this contract and recreate CCR's proprietary commercial product.

98.     As Defendants have recognized in writing, disclosure and use of CCR's trade secrets will result in irreparable harm, such that Defendants must immediately be enjoined from disclosing and using CCR's trade secrets.

99.     An injunction would promote, rather than hinder, the public welfare.  The balance of equities support entering injunctive relief.

100.    These actions entitle CCR to a preliminary injunction, after a hearing, enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all persons in active concert or in participation with Defendants from:

    (a) Disclosing or using CCR's trade secrets; and

    (b) Otherwise competing unfairly with CCR or injuring its business reputation in any manner.

101.    For these actions, there is no adequate remedy at law. CCR is therefore entitled to injunctive relief against Defendants.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, CCR respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief against Defendants including, but not limited to:

(1)    Actual and exemplary damages;

(2)    Disgorgement of any profits realized by Defendant Sharma;

(3)    Issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants from the acts described in this Complaint;

(4)    Award CCR its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate;

(5)    Award CCR its attorneys' fees and the costs of this lawsuit;

(6)    Order that Defendants provide an accounting of all of CCR's confidential information and trade secrets within their possession and a list of all third parties that Defendants have shared CCR's confidential information and trade secrets with;

(7)    Order that Defendants must file with the Court and serve on CCR counsel within 30 days after entry of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants has complied with the injunction; and

(8)    Grant CCR such other relief, at law or in equity, to which it is justly entitled.

January 2, 2026                          Respectfully submitted:

                                         **HOLLAND & KNIGHT LLP**

                                         By: */s/  Justin S. Cohen*

                                         **Justin S. Cohen**
                                            Texas Bar No. 24078356
                                            Justin.Cohen@hklaw.com
                                         **Hunter W. Bezner**
                                            Texas Bar No. 24126371
                                            Hunter.Bezner@hklaw.com

                                            One Arts Plaza
                                            1722 Routh St., Suite 1500
                                            Dallas, Texas 75201
                                            214.969.1700

                                         *Attorneys for Crystal Clearwater Resources, LLC*

**VERIFICATION**

My name is Derek Pedersen, and I am the Chief Executive Officer of Plaintiff Crystal Clearwater Resources, LLC in the case captioned *Crystal Clearwater Resources, LLC v. Apoorva Sharma, et al.* in the United States District Court for the Eastern District of Texas and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and based on information available to me in my role, I believe the allegations made are true to the best of my knowledge.

Executed in Denton County in the State of Texas on January 2, 2026.

Signed by:

*DEREK PEDERSEN*

E7961F36D088440...

Derek Pedersen
Chief Executive Officer for Crystal
Clearwater Resources, LLC